UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PAMELA LOUISE NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 4:13-cv-01011-JHE |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Pamela Louise Nichols ("Nichols") seeks review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Social Security Income ("SSI"). Nichols timely pursued and exhausted her administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, Nichols's motion for remand is **DENIED**, and the Commissioner's decision is **AFFIRMED**.[1]

**I. Factual and Procedural History**

Nichols was a thirty-six year old female at the time of her hearing before the Administrative Law Judge ("ALJ") on December 2, 2011. (Tr. 69, 83). Nichols has a limited education, (tr. 27, 130-31), and past relevant work as a housekeeper and supervisor of cleaners, (tr. 27, 48-49, 131, 150-55).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

Nichols filed her application for SSI on August 16, 2010, alleging an initial onset date of February 2, 2010. (Tr. 110-16). Nichols's application for SSI was denied, (tr. 58), and she requested a hearing before an ALJ, (tr. 67). After a hearing, the ALJ denied Nichols's claim on February 10, 2012. (Tr. 11-32). Nichols sought review by the Appeals Council, but it declined her request on March 29, 2013. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On May 28, 2013, Nichols initiated this action. (*See* doc. 1). In response to the court's briefing letter, (doc. 9), Nichols filed a "Brief in Support of Complaint," (doc. 12).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

---

[2] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for SSI as well as establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently engaged in substantial gainful activity;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)  whether the claimant can perform his past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

3

1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps on and two, [she] will automatically be found disabled if [she] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [her] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Nichols has not engaged in substantial gainful activity since August 2, 2010, the application date. (Tr. 16). At Step Two, the ALJ found Nichols had the following sever impairments: obesity, degenerative disc and joint disease of the lumbar spine, mild scoliosis, possible mild peroneal neuropathy in the left lower extremity, and possible fibromyalgia. (Tr. 16-17). At Step Three, the ALJ found Nichols does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18).

Before proceeding to Step Four, the ALJ determined Nichols's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 416.945(a)(1). The ALJ determined Nichols has the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a) except Nichols cannot operate foot controls. (Tr. 18-27). The ALJ further states Nichols cannot climb stairs, ladders, ropes, or scaffolds; can occasionally

4

stoop and crouch but cannot crawl or reach overhead; must avoid all exposure to excessive vibration; is limited to unskilled work activity; and must be allowed to alternate between sitting and standing at will.  (*Id.*).

At Step Four, the ALJ determined Nichols is unable to perform any past relevant work. (Tr. 27).  At Step Five, the ALJ determined, based on Nichols's age, education, work experience, and residual function, jobs exist in significant numbers in the national economy Nichols can perform.  (Tr. 27).  Therefore, the ALJ determined Nichols is not disabled and denied her claim. (Tr. 28).

### V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).  In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]  However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]."

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Id.* (citation omitted). The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and applied the correct legal standards. *Wilson*, 284 F.3d at 1221.

Nichols contends the ALJ's decision should be reversed because the ALJ failed to properly apply the pain standard, in light of the opinion of Dr. Turnley, Nichols's treating physician. (Doc. 12 at 7).

### A. The ALJ Properly Applied the Pain Standard

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* Failure to articulate such reasons requires the testimony be accepted as true as a matter of law. *Id.*

Nichols asserts the ALJ failed to use the proper legal standard in assessing her subjective complaints of pain when the ALJ concluded Nichols's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found her statements concerning intensity, persistence, and limiting effects of those symptoms were not credible. (Doc. 12 at 7). Nichols notes the ALJ's findings support a finding of an underlying medical

condition under the first prong of the pain standard. (*Id.* at 9). She then states Nichols meets the third prong of the pain standard because the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. (*Id.*). However, she does not address her prior assertion the ALJ failed to use the proper legal standard. The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 26-27). Nichols refers to this language on two separate occasions. (Doc. 12 at 7, 12). The first clause clearly represents a finding under the pain test as set out in *Holt*. It acknowledges medically determinable impairments (prong one) that could reasonably be expected to cause the alleged symptoms (prong three). The ALJ applied the proper legal framework with regard to the pain standard.

What Nichols actually takes issue with, as indicated by the final six pages of her analysis, is the ALJ's credibility analysis with regard to the testimony of Nichols and her treating physician, Dr. Turnley. (*See* doc. 12 at 9-16). Her analysis begins with the statement, "Nichols also meets prong [three] of the pain standard," and ends with the statement, "Based on the foregoing it is clear that Ms. Nichols meets the requirements of both prongs 1 and [3] of the pain standard as out lined [sic] above." However, as Nichols notes, once the general pain standard is met (which the ALJ clearly acknowledges it is), the claimant's testimony must be taken as true *unless* the ALJ's adverse credibility finding is supported by substantial evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990) ("If proof of an underlying condition is established, then the Secretary must establish a reasonable basis for rejecting the testimony if it was rejected. These reasons must be

7

based upon substantial evidence.").

Nichols confuses (1) the question of whether she has met the pain standard with (2) the ALJ's credibility finding on her and her physician's testimony regarding the intensity and limiting effects of that pain. The ALJ applied the proper legal framework to the first question and answered it in Nichols's favor: the pain standard is met. (Tr. 26-27). Therefore, Nichols's testimony is sufficient to establish disability if her testimony is otherwise credible. This subsequent question regarding the credibility of the witnesses as to the intensity and effect of the alleged pain requires an entirely separate analysis. *See Foote*, 67 F.3d at 1561-62 (applying the credibility analysis separately from the pain standard).

**B. The ALJ's Adverse Credibility Finding Regarding Nichols's Subjective Pain Testimony is Supported by Explicit and Adequate Reasons, as well as Substantial Evidence**

As noted above, the pain standard establishes a claimant's testimony as sufficient to support a finding of disability, but the ALJ must still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote*, 67 F.3d at 1561-62; *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. The ALJ discussed Nichols's medical history in detail, (tr. 19-26), and determined her "subjective reports . . . are simply not consistent with her reports in the pursuit of care or her presentation before providers," (tr. 26).

Nichols points to "numerous complaints of pain to her treating physicians and the actions taken by said physicians" as evidence supporting her subjective testimony. (Doc. 12 at 9-10). First, Nichols points to her complaint to Dr. Turnley in March 2010 of low back pain and left leg pain and discomfort. (*Id.* at 10) (citing tr. 250). Dr. Turnley noted Nichols was tender to

8

palpitation in the area of the left SI joint and discharged her with a refill of her medications. (*Id.*) (citing tr. 250). Next, Nichols points to a May 2010 visit to Dr. Turnley at which she complained of chronic low back pain and discomfort with some left hip pain. (*Id.*) (citing tr. 251). Dr. Turnley noted increased pain, added Flexiril to Nichols's regimen, and recommended another joint injection and another epidural block. (*Id.*) (citing tr. 251). Nichols also points to visits in June 2010 and April and July 2011, showing continuing complaints of low back and leg pain with slightly diminished range of motion and possible fibromyalgia. (*Id.* at 10-11) (citing tr. 252, 323, & 325). She also points to Dr. Turnley's pain assessment in November 2011, noting pain to such an extent as to be distracting to adequate performance of daily activities or work. (*Id.* at 11) (citing (tr. 346). Lastly, Nichols notes Dr. Sathyan Iyer's consultative physical examination, which opined that Nichols suffered from low back pain and would have significant impairment of function involving sitting and standing for long periods, walking, bending, lifting, squatting, working at heights, working around moving machinery, carrying, and overhead activities. (*Id.* at 11-12) (citing tr. 332).

  The ALJ addressed each of these examinations, among others, and found evidence in them contradicting their support of Nichols's testimony. The ALJ begins her analysis with Nichols's visit to a neurologist in September 2009, several months before alleged onset, resulting in an "unremarkable" examination beyond her complaint of a headache. (Tr. 20) (citing tr. 208-09). A visit to Dr. Turnley, an orthopedic specialist, in January 2010 resulted in a recommendation to return to regular work activity. (*Id.*) (citing tr. 299). Claimant also filled out a disclosure form stating she had no other impairments beyond the complaint regarding her back. (*Id.*) (citing tr. 296). The ALJ acknowledged Nichols began taking Lortab around that time. (*Id.*) Next, the ALJ addressed the March and May 2010 examinations, cited by Nichols, and

noted, in addition to the notations of some pain, Dr. Turnley's notes stated Nichols was "not acutely ill" and she "ambulate[d] with a normal gait and station and [did] not require an assistive device." (*Id.* at 21) (citing tr. 250-51). In June 2010, still taking Lortab and Flexeril, Nichols reported increased activity resulting in increased pain. (*Id.*) (citing tr. 252). There had been no indication of inability to work between January and June from Nichols or Dr. Turley. (*Id.*). The ALJ noted, before Nichols was to return again, she submitted her application for benefits. (*Id.*). Despite Nichols's allegations of severe impairment, there is no evidence she received medical care between June 2010 and March 2011. (*Id.* at 23). The ALJ acknowledged the other post-application examinations, cited by Nichols, noting with particular emphasis Dr. Turnley's confusion about the expressed symptoms in April 2011, at which time Dr. Turnely noted no major impairments. (*Id.*) The ALJ also pointed out that the record indicates, after July 2011, Nichols sought no additional treatment until November 3, 2011, shortly after she was notified of the hearing before the ALJ. (*Id.* at 24, 25).[5]

    The medical record clearly contains evidence contrary to the cherry-picked evidence Nichols cites; however, Nichols also asserts Dr. Turnley's November 2011 Clinical Assessment of Pain supports her testimony about the severity of the pain and was entitled to substantial, if not controlling, weight. (Doc. 12 at 13-14). As with the claimant's subjective testimony after the pain standard is met, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause to reduce the weight given to a

---

[5] The ALJ also discounted the consultative physician's analysis to some degree because, based on the other relevant medical data, his conclusions appeared to be based on Nichols's exaggeration of her symptoms. (Tr. 25). Regardless, the ALJ gave his report "significant, but not great weight," (*id.*), and, "in an abundance of caution, and as it [was] more beneficial to the claimant," adopted his recommendations of more severe limitations for the RCF even though the ALJ believed the medical evidence did not necessarily warrant them, (*id.* at 27).

treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ expressly concluded Dr. Turnley's November 2011 pain assessment was not supported by the medical evidence in the record and was not supported by direct, contemporary examination or treatment by Dr. Turnley. (Tr. 25).

Nichols acknowledges the ALJ stated her reasons for not giving Dr. Turnley's opinion great weight, (tr. 15), but asserts the ALJ erred by failing to consider the following factors under 20 C.F.R. §§ 404.1527(c): "(1) the fact Dr. Turnley is an *examining* physician, (2) the fact Ms. Nichols has maintained a *treatment relationship* with Dr. Turnley since 2011, [and] (3) the fact the evidence also supports Dr. Turnley's opinion through both objective imaging and Dr. Turnley's own treatment notes," (*id.* at 14-15) (emphasis in original).

On the contrary, the ALJ not only acknowledged the examining and treatment relationships between Dr. Turnley and Nichols but explicitly discounted them because there was "no evidence of treatment from [Dr. Turnley] since July 2011," which "greatly diminish[ed] the value of her opinion." (Tr. 25). Similarly, the ALJ explicitly referred to the unremarkable findings of previous physical examinations and the lack of indication from Dr. Turnley the claimant was severely incapacitated. (*Id.* at 26). Furthermore, as addressed extensively above, the ALJ explicitly supported her conclusion Dr. Turnley's medical notes, among those of other physicians, did not support a finding of disabling intensity in Nichols's pain. (*Id.* at 20-24). Lastly, the ALJ pointed to direct inconsistencies in the November 2011 pain assessment itself, stating Dr. Turnley's conclusions (1) Nichols "suffers pain that is present to such an extent as to be distracting to adequate performance of daily activities or work" but (2) "physical activities

11

such as walking, standing, and sitting would increase pain, but not to the extent as to prevent adequate functioning in such tasks" "are not reconcilable." (*Id.* at 26). Altogether, these expressly articulated reasons apply the proper legal framework and provide good cause for reducing the weight given to Dr. Turnley's November 2011 pain assessment.

The record contains such relevant evidence as a reasonable person would accept as adequate to support the ALJ's conclusion Nichols's testimony of severe, debilitating pain was not credible in light of the medical evidence. As this constitutes substantial evidence and is based on application of the proper legal standards, the undersigned may not override that conclusion.

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is **AFFIRMED** and this action will be **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 8th day of August, 2014.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE